## DEAL v. DEAL.

No. 19049. Opinion Filed July 17, 1928.

Rehearing Denied Feb. 5, 1929.

Leahy, MacDonald, Maxey & Files and A. N. Murphey, for plaintiff in error.

J. C. Cornett and Allen & Jarman, for defendant in error.

DIFFENDAFFER, C. The plaintiff in error was defendant, and defendant in error was plaintiff below. The parties will be designated herein as in the trial court. Plaintiff sued defendant in the district court of Oklahoma county for divorce, custody of their minor child, Sammie, about 16 months of age, and permanent alimony in the sum of $50,000, alleging that defendant was the owner of money and property aggregating in value $175,000.

In her petition, plaintiff alleged two statutory grounds for divorce—gross neglect of duty and extreme cruelty. Defendant demurred on the ground that the petition did not state facts sufficient to constitute a cause of action. The demurrer was overruled and defendant answered, putting in issue both grounds relied upon. Further answering as to alimony, defendant pleaded that at the time of his marriage he was a minor; that he was a duly enrolled member of the Osage Indian Tribe, and that all of his funds and income, except rental on his land, were under the supervision and control of the Secretary of the Interior; that some time in January, 1926, plaintiff had filed an action in the district court of Osage county for separate maintenance and obtained a temporary order requiring him to pay her $100 per month, which was increased after the birth of their child to $166.66 per month to plaintiff, and $30 per month for the support of the child; that he had fully complied with this order and made the payments through his guardian; and that that action was dismissed shortly before the filing of this action, and that he had in no way neglected his duty towards plaintiff.

The case was tried to the court upon these issues. The trial court entered a decree for plaintiff, granting her a divorce and the custody of the minor child, and awarding permanent alimony in the sum of $48,000. Defendant brings the case here for review.

Defendant sets up seven assignments of error. The first is that the court erred in overruling the demurrer to the petition. The motion for new trial contains 17 alleged causes or reasons for new trial, but the order overruling the demurrer to the petition is not included therein. It has often been held that the action of the trial court in overruling a demurrer to a petition where the defendant had pleaded further will not be reviewed upon appeal, unless it is presented to the trial court in a motion for a new trial. Commercial Investment Trust v. Ferguson, 96 Okla. 163, 220 Pac. 925; Aultman & Taylor Machinery Co. v. Fuss, 86 Okla. 168, 107 Pac. 308; Sharum v. Sharum, 121 Okla. 53, 247 Pac. 97; Shafer Oil & Refining Co. v. Thomas, 120 Okla. 253, 252 Pac. 41.

The assignment of error as to the competency of evidence is abandoned. Defendant in his brief does not point out any evidence admitted which he claims is incompetent.

All other assignments of error, except as to alimony and attorney's fee, may be treated as one. The only question before this court is: Is the judgment and decree clearly against the weight of the evidence?

We have examined the record in the case, and are of the opinion that the evidence as to gross neglect of duty supports the findings in favor of plaintiff. The record discloses that defendant was divorced from a former wife on June 8, 1925; that he and plaintiff were married August 5, 1925, at Independence, Kan.; six months not having expired, defendant feared to remarry in the state of Oklahoma. He, his mother and step-father, who was his guardian, and plaintiff went to Independence, Kan., where the marriage ceremony was performed. Defendant being advised that it would be unlawful for him to cohabit with plaintiff in the state of Oklahoma during the six months immediately following the divorce from his former wife, took plaintiff to Arkansas City, Kan., and rented an apartment there, intending to remain there until the expiration of the six

months period when he could legally return to Oklahoma with plaintiff. Some difficulty arose there, and about November defendant sent plaintiff to the home of his mother at Barnsdall, Okla., to await the expiration of the six months, when he was to return to her. Plaintiff had become pregnant and defendant returned to Barnsdall about the last of November or first of December, 1925, and after six months from the date of his former divorce, defendant and plaintiff were legally married at Bartlesville, Okla. Shortly thereafter, plaintiff began to prepare for the coming of the child, and very naturally wanted some money to buy the things so dear to the heart of every young married woman who is preparing for the arrival of her first born. Defendant did not furnish her with the money necessary for this purpose, and she was compelled to look to others therefor, principally defendant's mother. Defendant then became indifferent and apparently cared nothing for the welfare of his wife while she was in this delicate condition. He left her with his mother and went away on long hunting trips, etc. Plaintiff was left practically without means, and at the suggestion of defendant's mother, according to her testimony, she instituted the proceedings in Osage county for separate maintenance, resulting in the order for temporary allowance of $100 per month, which was increased to $166.66 after the birth of the child. This action displeased defendant, and thereafter he told plaintiff she had as well get the question of alimony out of her head, as he would not stand for it. Defendant then left plaintiff alone with his mother and plaintiff's aunt, not looking after her in any way. She was almost entirely without his company, comfort, or attention during the remaining period of her pregnancy and went to the hospital alone, and there went through the ordeal of childbirth, defendant paying no attention to her until after the birth of the child, when some one called his attention to the fact that it was his duty to at least call at the hospital and see his wife and child. This he did once or twice, when some difficulty arose between defendant and plaintiff's uncle. Defendant thereafter paid but little attention to plaintiff or the child. Plaintiff a number of times requested that he prepare a home for her, either in the house he owned at Barnsdall or on one of his farms. This he declined to do, though he did on one occasion return to plaintiff and live with her a short while. He then left her and went to the home of his aunt at Fairfax, and plaintiff learning of his

whereabouts, went there and tried to induce him to return to her and prepare a home for her, which he refused to do, and he told plaintiff she had as well get a divorce, and he testified that he thought she had ample grounds therefor. These things were in substance admitted by defendant at the trial, except that he testified that he was willing and wanted to move on the farm with plaintiff, but she declined and said she would not live on a farm; and further that she told him she would not live in as small a town as Barnsdall.

We think the record in this case discloses gross neglect of duty on the part of defendant. We also think the treatment of plaintiff by defendant during the period of her pregnancy and at childbirth, and thereafter, amounted to extreme cruelty. True there is no evidence of physical violence, during this period, except on one occasion while living at Arkansas City, when defendant admitted he struck or slapped plaintiff once. In Finnell v. Finnell, 113 Okla. 164, 240 Pac. 62, Mr. Justice Clark, in speaking for the court, in discussing what constitutes extreme cruelty, said:

"Extreme cruelty does not mean that the defendant should strike or maim the plaintiff, but any conduct on the part of the defendant that would destroy the happiness and health of the plaintiff and defeat the very purposes of matrimony would be extreme cruelty."

We think the conduct of defendant in the instant case was unreasonable, and tended to, and did, destroy the peace and happiness of plaintiff, and was such as to utterly destroy the legitimate aims of matrimony. As a matter of fact, we think the conduct of defendant in thus leaving plaintiff, to be taken care of and comforted by strangers at the time when she was called upon to undergo the ordeal of childbirth, when he, of all persons, should have been near to comfort her, was cruelty beyond curses, epithets, or even physical violence and was perhaps more painful and intolerable to plaintiff than physical abuse.

The testimony of plaintiff was straightforward and reasonable and did not tend to show malice, hatred or ill will toward defendant. Instead of the findings and decree being against the clear weight of the evidence, we think the clear weight of the evidence is in favor of the decree, both as to the charge of gross neglect of duty and extreme cruelty.

Defendant complains that the award of

alimony should be set aside, because it is contrary to the laws of Congress governing the estate of defendant, he being an Osage Indian who has not received a certificate of competency. In support of this assignment, defendant cites the Act of Congress of February, 27, 1925, 43 Stat 1008, wherein it is provided, that the Secretary of the Interior shall cause to be paid at the end of each fiscal quarter to each adult member of the Osage Indian Tribe not having a certificate of competency, $1,000 quarterly, except where such adult members have guardians, in which case the payment may be made to the legal guardian or direct to such Indian in the discretion of the Secretary of the Interior, the total payment, however, not to exceed $1,000 quarterly, etc. And section 3 of the same act, which provides:

"Lands devised to members of the Osage Tribe of one-half· or more Indian blood or who do not have certificates of competency, under wills approved by the Secretary of the Interior, and lands inherited by such Indians, shall be inalienable unless such lands be conveyed with the approval of the Secretary of the Interior. Property of Osage Indians not having certificates of competency purchased as hereinbefore set forth shall not be subject to the lien of any debt, claim or judgment except taxes, or be subject to alienation, without the approval of the Secretary of the Interior."

Defendant also cites section 6 of the said act, which provides:

"No contract for debt hereafter made with a member of the Osage Tribe of Indians not having a certificate of competency, shall have any validity, unless approved by the Secretary of the Interior. In addition to the payment of funds heretofore authorized, the Secretary of the Interior is hereby authorized in his discretion to pay, out of the funds of a member of the Osage Tribe not having a certificate of competency, any indebtedness heretofore or hereafter incurred by such member by reason of his unlawful acts of carelessness or negligence."

And section 7 of the same act, which is:

"Hereafter none but heirs of Indian blood shall inherit from those who are of one-half or more Indian blood of the Osage Tribe of Indians any right, title, or interest to any restricted lands, moneys, or mineral interests of the Osage Tribe; Provided, that this section shall not apply to spouses under existing marriages."

It is contended that under the act referred to the trial court is without jurisdiction over the funds or property of defendant save the house and lot owned by defendant in Barnsdall.

It is contended that under section 7, supra, Congress did not intend that a person in the position of plaintiff, she being not of Indian blood, should share in the restricted lands or funds of defendant, he being a member of the Osage Tribe of more than one-half Indian blood.

The evidence is that plaintiff is of non-Indian blood, and defendant is of 5/8ths Osage Indian blood. However, we are not here concerned with the disposition of the estate of defendant in case of his decease, nor are we here concerned with the enforcement of the award of alimony. Section 508, C. O. S. 1921, provides that:

"When a divorce shall be granted by reason of the fault or aggression of the husband the wife * * * shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or installments as the court may deem just and equitable."

The decree does not award plaintiff any alimony out of the real or personal property of defendant. The decree is for $$48,000 permanent alimony.

We think the evidence fully supports the findings of the trial court that defendant is possessed of money and property of the approximate value of $153,000.

Defendant assigns in his petition, error in the amount of the award and in his brief assails the award in that it violates the Act of Congress, supra. The same objection would apply to any award in excess of the value· of the house and lot in Barnsdall, Okla., owned by defendant, which is not subject to any restriction or control by the Secretary of the Interior. But to limit the award to that amount, we think it would then be wholly inadequate and unjust and unfair to plaintiff.

We have examined the record carefully and considering the whole record, we believe the award is excessive. We are not unmindffful of the rule that alimony rests in the discretion of the trial court and is to be exercised with reference to established principle, and in view of all the circumstances, such as the husband's estate and ability, the wife's condition and means and the conduct of the parties, we hesitate somewhat to hold that the trial judge in this case, with his long experience on the bench, has allowed an excessive sum as permanent ali-

mony, but we think, considering the comparatively short time between the marriage and the decree, and the fact that defendant is contributing $50 per month to the support of his child by a former wife, the award should be reduced to $20,000 permanent alimony, which sum we think is reasonable under the cimcumstances of this case.

The fifth ground of the motion for new trial is that the court erred in fixing the amount of recovery as attorney's fees and that the same is excessive and too great.

The evidence of a number of prominent attorneys of Oklahoma City, including a former justice of this court and a former Supreme Court commissioner, was that $5,000 was a reasonable attorney's fee, but nearly all the witnesses modified their estimate to the effect that in the event the court after hearing the case would say that plaintiff was not entitled to $50,000 alimony, then a $5,000 fee would be too much, and that the result obtained in the way of alimony was one of the principal things which the witnesses considered in arriving at their estimate of what would be a reasonable attorney's fee. Having reached the conclusion that the award of alimony was excessive, it follows, under the evidence of the expert witnesses, that the allowance for attorney's fee should be reduced.

We are of the opinion that the amount allowed for attorney's fee is excessive, and that $2,500 would be a reasonable attorney's fee in this case.

The judgment for permanent alimony should be modified and reduced to the sum of $20,000 and the judgment for attorney's fee modified and reduced to $2,500, and as so modified, the decree and judgment should be affirmed.

TEEHEE, BENNETT, LEACH, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 3 C. J. p. 974, §870. (2) 19 C. J. p. 142, §367. (3) 19 C. J. p. 269, §614; anno. 44 L. R. A. (N. S.) 1010-1026; 1 R. C. L. p. 929; 1 R. C. L. Supp. p. 284. (4) 19 C. J. p. 241, §561.